IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Crim. No. 1:09-CR-384-02** |
| **v.** | : | |
| | : | |
| | : | **Judge Sylvia H. Rambo** |
| **ERNEST G. FINK** | : | |

# M E M O R A N D U M

Defendant Ernest G. Fink, who entered a plea of guilty to engaging in a
conspiracy to commit wire and mail fraud and to defraud the United States
Department of Transportation in the implementation, execution, and administration
of its Disadvantaged Business Enterprises program (Doc. 77), filed a motion
requesting his release from prison pending appeal (Doc. 366), which the government
opposes (Doc. 371).  For the reasons stated herein, the court finds that Defendant
has failed to demonstrate a valid basis for his release, and will accordingly deny the
pending motion.

## I.        Background

The factual background was set forth at length in this court's
memorandum accompanying its order denying the post-trial motions filed by co-
defendant Joseph W. Nagle.  *See generally United States v. Nagle*, Crim. No. 09-cr-
0384-01, 2013 WL 3894841 (M.D. Pa. July 26, 2013).  The court will therefore
recite only a short summary of the facts necessary for purposes of deciding the
matter *sub judice*.

Defendant entered a guilty plea for his role in a massive fraud
perpetrated against the Disadvantaged Business Enterprise ("DBE") program, and
the amount of loss attributable to his conduct was calculated as $135.8 million,

which, pursuant to U.S.S.G. § 2B1.1(N), resulted in a 26-level increase to his
Offense Level Computation.   Defendant objected to the method utilized by the
probation office and the government in reaching these calculations, arguing that the
loss amount attributable to his conduct was $1,037,828.61.  A hearing on
Defendant's objections to the loss amount was held on February 26, 2014.

On May 16, 2014, the court issued an opinion overruling Defendant's
objections to the loss calculation, in which the court determined that the amount of
loss for sentencing guideline purposes was $135.8 million, which represented the
entire face value of the government benefits obtained as a result of the fraudulent
contracts. (Doc. 282.)  At Defendant's July 14, 2014 sentencing hearing, the court
reiterated its conclusion as to the loss attributable to Defendant's conduct, but then
granted a variance and a downward departure on the basis that the guideline range of
168 to 210 months overstated the seriousness of the offense and the statutory
maximum for a guilty plea to the offense charged was 60 months.  The ten-level
downward departure resulted in a guideline range that would have applied had the
court found the loss figure for which Defendant argued.  Accordingly, the court
sentenced Defendant to undergo a term of imprisonment of 51 months and to pay a
fine of $25,000.00.  (Doc. 297.)  Defendant filed his notice of appeal on July 24,
2014.  (Doc. 311.)

On appeal, the Third Circuit reversed this court's finding as to loss,
holding that in a DBE fraud case the court should calculate the amount of loss under
§ 2B1.1 of the United States Sentencing Guidelines "by taking the face value of the
contracts and subtracting the fair market value of the services rendered under those
contracts," which includes "the fair market value of the materials supplied, the fair

market cost of the labor necessary to assemble the materials, and the fair market value of transporting and storing the materials." *United States v. Nagle*, 803 F.3d 167, 181 (3d Cir. 2015).  The Court of Appeals added that, "[i]f possible and when relevant, the District Court should keep in mind the goals of the DBE program that have been frustrated by the fraud." *Id*.  Because of its concern that the incorrect loss calculation may have affected Defendant's sentence, the Third Circuit remanded to this court for resentencing. *Id*. at 183.

On November 30, 2015, this court issued an opinion rejecting Defendant's argument that, based on the Third Circuit's reversal and remand, the loss attributable to his conduct should be zero. *See United States v. Nagle*, Crim. No. 09-cr-384, 2015 WL 7710467 (M.D. Pa. Nov. 30, 2015).  Instead, the court found that the appropriate loss amount was $1,037,828.61, which represented the face value of the DBE contracts less the fair market value of the services provided by Defendant, or, in other words, the profits that legitimate DBEs were deprived of due to Defendant's fraud. *Id*. at *5.  The court resentenced Defendant to the same 51-month sentence originally imposed, and invited Defendant to request a new sentencing hearing, if desired.  Defendant requested a new sentencing hearing, at which the court imposed a 41-month sentence pursuant to the November 1, 2015 revision of the U.S.S.G.  (Doc. 360.)  Defendant then filed a notice of appeal to the Third Circuit on March 9, 2016 (Doc. 365), as well as the instant motion for release pending appeal on March 17, 2016 (Doc. 366).  The government filed its opposition to Defendant's motion for release on March 28, 2016.  (Doc. 371.)  Thus, the matter is ripe for disposition.

## II.      Legal Standard

Defendant's motion for release is governed by 18 U.S.C. § 3143(b), which provides, in pertinent part, as follows:

> (1)    Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –
>
>> (A)    by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>>
>> (B)    that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
>>
>>> (i)   reversal,
>>>
>>> (ii)  an order for a new trial,
>>>
>>> (iii) a sentence that does not include a term of imprisonment, or
>>>
>>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b).

The Third Circuit has explained that, in reviewing a motion for release pending appeal, a district court must:

> Under [§ 3143], after first making the findings as to flight, danger, and delay, a court must determine that the question raised on appeal is a "substantial" one, *i.e.*[,] it must find that the significant question at issue is one which is either

> novel, which has not been decided by controlling
> precedent, or which is fairly doubtful.

*United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985).  Absence of precedent is not enough; the question must still be "significant."  *See United States v. Smith*, 793 F.2d 85, 89 (3d Cir. 1986); *see also United States v. Cordaro*, Crim. No. 10-cr-0075, 2012 WL 3113933, *5 (M.D. Pa. July 31, 2012).  A question is significant if, for example, the issue is "debatable among jurists" or "adequate to deserve encouragement to proceed further."  *See Smith*, 793 F.2d at 90 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see also United States v. Brown*, 356 F. Supp. 2d 470, 476 (M.D. Pa. 2005); *Cordaro*, 2012 WL 3113933 at *5.

After a court finds that the question on appeal is substantial, it must still determine "whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial."  *Miller*, 753 F.2d at 23.  This standard does not require the court to conclude that its own orders are likely to be reversed.  Rather, the phrase "likely to result in reversal or an order for a new trial" signifies that a court "may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial."  *Id.*

Importantly, because there is a presumption of detention after sentencing, a defendant bears the burden to prove that bail pending appeal is warranted under § 3143.  *Id.* at 22, 24; *United States v. Bissell*, 954 F. Supp. 903, 906 (D.N.J. 1997) ("§ 3143(b) creates a presumption against postconviction release pending appeal . . . . [T]here is absolutely no reason for the law to favor release pending appeal or even permit it in the absence of exceptional circumstances.").

**III.**     **Discussion**

As an initial matter, the Government does not dispute that Defendant poses no risk of flight or danger under subpart (a) of § 3143.  As Defendant notes, he is not a violent man and was released on his own recognizance from the time of his indictment until he voluntarily surrendered into custody more than five years later.  (Doc. 366, p. 3 of 4.)  Thus, § 3143(a) is clearly satisfied.

Defendant's lone argument in support of his motion for release pending appeal is that the Third Circuit is likely to remand for resentencing based on a loss amount of zero, which would result in a sentence of time served or even less than time served when including the time necessary to decide the appeal.  (*See id.*)  This court disagrees.

On remand, this court found that the amount of loss attributable to Defendant's conduct was $1,037,828.61.  As the court explained:

> The amount of loss resulting from Defendants' fraudulent scheme . . . is not simply a question of the pecuniary harm that USDOT may have suffered.  As the Third Circuit mandated in its appellate opinion, this court must determine loss by subtracting the fair market value of the services performed by Defendant[] from the full contract price, while also 'keep[ing] in mind the goals of the DBE program that have been frustrated by the fraud.'

*Nagle*, 2015 WL 7710467, at *4 (quoting *Nagle*, 803 F.3d at 181).  Based on the direction from the Third Circuit, this court found that the lost profits that legitimate DBEs would have received for completing the contracts, *i.e.*, the difference between the face value of the contracts and the fair market value of the supplies and labor needed to complete the projects, was a fair measure of the loss.  *Id*.  Because this court believes it has correctly interpreted and applied the Third Circuit's instructions as to calculating the loss in a DBE fraud case such as this, there is no basis upon

6

which to presume that this court's loss finding as to Defendant is "likely to result in reversal." 18 U.S.C. § 1341(b); *Miller*, 753 F.2d at 20.

The only remaining issue for the court to consider at sentencing was what effect the 2015 amendment to the sentencing guidelines may have on Defendant's sentence. At his original sentencing, after the court departed downward to equate with a loss amount of $1,037,828.61, Defendant had a Criminal History Category of One and an Offense Level of 24, for a suggested guideline range of 51 to 60 months incarceration. The 2015 amendment to the sentencing guidelines reduced Defendant's Offense Level to 22, for a new guideline range of 41 to 51 months incarceration. The court accordingly reduced Defendant's sentence from 51 months to 41 months, which is at the lower end of the amended guideline range. Because the 19 months Defendant has already spent incarcerated, even with good time credit, still leaves approximately 18 months on his sentence, his appeal will be decided well before he has served his full sentence.

## IV.      Conclusion

Based on the foregoing, the court does not find it likely that the Third Circuit will reverse the loss finding of $1,037,828.61 attributable to Defendant's conduct. In addition, Defendant's current sentence is within the amended guideline range and need not be reduced. Accordingly, Defendant's motion for release pending appeal will be denied.

An appropriate order will issue.


                                                    s/Sylvia H. Rambo
Dated:  April 19, 2016                         United States District Judge

7